UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY AIKENS,

                     Plaintiff,

     -v-

CAPTAIN ROYCE,

                    Defendant.

No. 14-CV-663 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Anthony Aikens
Collins, NY
*Pro Se Plaintiff*

Rebecca Ann Durden, Esq.
Assistant Attorney General
Office of the Attorney General of the State of New York
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Anthony Aikens ("Plaintiff") filed the instant Complaint pursuant to 42

U.S.C. § 1983 against Deputy Superintendent Royce ("Defendant").[1]  Plaintiff alleges that

Defendant violated his rights under the Eighth and Fourteenth Amendments of the United States

Constitution by refusing to allow witnesses to testify on Plaintiff's behalf at a Tier III

disciplinary hearing (the "Hearing"), subjecting him to keeplock as a result of the Hearing, and

conspiring with other officers to deprive Plaintiff of his rights.  (*See* Second Am. Compl.

("SAC") (Dkt. No. 25).)  Before the Court is Defendant's Motion to Dismiss the Second

---

[1] At all times relevant to the matter before this Court, Defendant's title was "Captain."
He has since been promoted to Deputy Superintendent.  (*See* Def. Royce's Mem. of Law in
Supp. of His Mot. To Dismiss the Second Am. Compl. 1 n.1 (Dkt. No. 33).)

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Mot. to Dismiss (Dkt. No. 32).)  For the following reasons, Defendant's Motion is granted, but Plaintiff is given leave to amend.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint, the documents appended thereto, and the filings that Plaintiff submitted in opposition to the instant Motion, and are taken as true for the purpose of resolving the Motion.  At the time of the incidents alleged in Plaintiff's Second Amended Complaint, Plaintiff was an inmate at Green Haven Correctional Facility.  (SAC ¶ 2.)  On January 13, 2012, at approximately 5:15 p.m., Plaintiff was returning to his cell block from the mess hall with Corrections Officer Hamburg ("Hamburg"), who was informed by another officer that a fight had ensued on the nearby stairs. (*See* Pl.'s Mem. of Law in Supp. Not To Dismiss the Second Am. Compl. ("Pl.'s Second Mem.") Ex. D. ("Grievance") 1 (Dkt. No. 38).)[2]  Plaintiff and Hamburg proceeded up the stairs, and Hamburg told Plaintiff "to go lock in."  (*Id.*)  Plaintiff alleges that before he could comply with Hamburg's request, other officers arrived and one officer told him to place his hands on the wall, and another officer told him to place his hands higher above his head.  (*Id.*)  Sergeant Jones ("Jones") then "sna[t]ch[ed]" Plaintiff "of[f] the wall," slammed Plaintiff into the wall, and then threw him toward another wall, stating that Plaintiff "will do as [he is] fucken [sic] told."  (*Id.*) Plaintiff was then placed back on the wall by officers who cuffed one of his hands.  (*Id.*) Hamburg informed the officers that Plaintiff was not involved in the fight and Plaintiff was then

---

[2] Citations to the Grievance correspond to the handwritten page numbers on the top of the first three pages of Plaintiff's Grievance.

"told to go lock in and [he] did." (*Id.* at 1–2.) Plaintiff alleges that the incident resulted in a permanent injury to his spine and neck. (SAC ¶ 26.)[3]

Around 7 p.m. that evening, Plaintiff went to the prison medical clinic accompanied by Officer Rivers ("Rivers"), where he informed the nurse administrator that he was in pain from the earlier incident and wanted to report it. (Grievance 2.)[4] The nurse administrator advised Plaintiff to go to the Emergency Sick Call Unit next door. (*Id.*) Before Plaintiff could comply, Lieutenant Tokarz ("Tokarz") stated to Plaintiff: "Oh it's you. Last time you got a pass[,] this time you are going down hard [to] Keep lock and the ticket will be a [Tier] 3." (*Id.*)[5] After Tokarz left, Plaintiff was placed into keeplock. (*Id.*)

Plaintiff alleges that Jones, at the direction of Tokarz, filed a false misbehavior report, which gave rise to the Hearing. (*See* Pl.'s Second Mem. at unnumbered 1.) On January 20, 2012 at approximately 10:47 a.m., Defendant held the Hearing. (SAC ¶ 8.) At the Hearing, Plaintiff informed Defendant that the "misbehavior report that was written on him was in retaliation for reporting [an assault] by . . . Jones to the Nurse Administrator." (*Id.* ¶ 9; *see also* Pl.'s Second

---

[3] The Court notes that in his second memorandum in opposition to the Motion, Plaintiff attached an affidavit from John F. Waller, M.D., which is captioned as Anthony Aikens v. Sgt. M. Jones, et al., 12-CV-1023, as well as various medical records. (*See* Pl.'s Second Mem. at unnumbered 8–19.) In the affidavit, Dr. Waller states that Plaintiff suffers from a pre-existing chronic back and neck condition from an incident in August 1999, (*id.* at unnumbered 9), contrary to Plaintiff's allegations, he was not injured during the January 13, 2012 incident, (*id.* at unnumbered 10), and that his pre-existing condition was not exacerbated by the incident, (*id.* at unnumbered 11).

[4] Plaintiff refers to "Officer Raverra" in the Grievance, but in his filings before this Court, including the Second Amended Complaint, Plaintiff identifies him as Officer Rivers. (*See, e.g.*, SAC ¶ 10.) For consistency, the Court refers to the officer as Rivers.

[5] Plaintiff refers to "LT Turkoff" in the Grievance, but in his filings before this Court, including the Second Amended Complaint, Plaintiff identifies the Lieutenant by the name of Tokarz. (*See, e.g.*, SAC ¶ 26.) For consistency, the Court refers to the Lieutenant as Tokarz.

Mem. at unnumbered 1.)  Plaintiff also provided Defendant with the names of four inmate witnesses that he claimed "would state exactly what happen[ed] on [January 13, 2012,] and were willing to testify for him[,] [a]nd that other witnesses[] [would] testify that [P]laintiff went . . . to the 7 p[.]m[.] medication run" that preceded Plaintiff's relegation to solitary confinement.  (SAC ¶ 10.)  In his opposition papers, Plaintiff states that during the Hearing, Plaintiff's "witnesses[] stated on [the] record that [P]laintiff complied with orders to get on the wall," and that inmate's counsel made the statement four to five times on the record.  (Pl.'s First Opposing Mot. Not To Dismiss the Second Am. Compl. ("Pl.'s First Mem.") at unnumbered 2 (Dkt. No. 37).)  Moreover, "Plaintiff's other witnesses[] gave direct statements on [the] record that [P]laintiff went to the 7 p[.]m[.] medication run and was not [in] keep lock as the misbehavior report stated."  (*Id.*)  Plaintiff alleges that Defendant did not permit one of Plaintiff's witnesses, Willie Young ("Young"), to testify but did allow Young to submit "a sworn affidavit concerning what was said and took place" on the date of the incident.  (SAC ¶ 11.)  Plaintiff further explains that Young gave a sworn statement of what he heard between the nurse administrator and Rivers, and that he described how Jones's actions were "wrong when [P]laintiff was already on the wall complying with orders."  (Pl.'s First Mem. at unnumbered 3.)  Plaintiff claims that Defendant "ignored all of the[] alleged facts made by [P]laintiff's witnesses[]," and Hamburg and Jones "gave different descriptions of the excessive force used on [P]laintiff," which Defendant also ignored.  (*Id.*)

Plaintiff alleges that Defendant "was personally involved in [a] conspir[acy] with witnesses[] he personally call[ed] to testify" at the Hearing, including Hamburg and Tokarz, which allowed Hamburg and Tokarz to "retaliate and make false accusations on [the] record."

(SAC ¶ 14.)  Plaintiff also brings "an equal protection claim because [he] was not only treated differently, but single[d] out as an individual for arbitrary and irrational treatment."  (*Id. ¶* 24.)

The documents appended to the Second Amended Complaint indicate that Defendant found Plaintiff guilty of "Interference with Employee," "Refusing Direct Order," and a "Movement Regulation Violation," and ordered Plaintiff to keeplock with a loss of privileges. (*See* SAC Ex. A at unnumbered 2, 4.)[6]  In response to Plaintiff's letter of appeal, Albert Prack ("Prack"), the Special Housing and Inmate Disciplinary Program Director, reviewed and modified Defendant's Order on April 4, 2012.  Prack dismissed the "Interference with Employee" charge and indicated that there was "no change in penalty," which was recorded as one month in keeplock with the loss of privileges.  (*Id.* at unnumbered 4.)

In his opposition papers, Plaintiff states that he "suffer[ed] a significant hardship while being confined [in keeplock] because [he] was in severe pain from the assault on him on [January 13, 2012]," and that the "condition of [his] confinement along with [his] condition . . . were not normal conditions."  (Pl.'s Second Mem. at unnumbered 3; *see also* Pl.'s Mem. of Law in Further Supp. Not To Dismiss the Second Am. Compl. With Its Exhibits ("Pl.'s Third Mem.") 2 (Dkt. No. 39) (explaining that Plaintiff "was significantly injured during an earlier use of force, which cause[d] [him] greater discomfort").)  Plaintiff states that he "was confined with a severely injured back [and] neck condition[,]" and that "while confin[e]d with these injuries[,] [P]laintiff's medical provider . . . saw and treated [P]laintiff."  (Pl.'s Second Mem. at unnumbered 4.)  In particular, Plaintiff states that his doctor placed him on Percocet on January 17, 2012 to help alleviate "the severe pain and discomfort [that he] suffered because of

---

[6] "'Keeplock' is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates."  *Gittens v. Lefevre*, 891 F.2d 38, 39 (2d Cir. 1989); *see also* N.Y. Comp. Codes R. & Regs. tit. 7, § 251-1.6 (2015).

the use of force on him on [January 13, 2012]." (Pl.'s Third Mem. 2.) Plaintiff further claims

that his "confinement differed . . . from general population because [his] constitutional rights

were violated when [he] sought assist[a]nce in reporting being injured and because . . . he was

harass[ed] [and] threaten[ed] and reta[li]ated against by superior officers and lock[ed] up . . . on

[January 13, 2012]." (*Id.* at 3.)

B. Procedural History

Plaintiff filed the original Complaint on January 27, 2014. (Dkt. No. 2.) On September

18, 2014, Plaintiff submitted a Notice of Motion for Summary Judgment. (Dkt. No. 25.)

Attached to the Motion, Plaintiff submitted a Second Amended Complaint with attached exhibits

alleging violations of the Eighth and Fourteenth Amendments. (*Id.*) In an order dated

September 26, 2014, the Court denied Plaintiff's Motion for Summary Judgment without

prejudice, finding that it was premature, "as Plaintiff first filed his 'Second Amended Complaint'

along with his Motion, and Defendant ha[d] not yet responded to this filing." (Order (Dkt. No.

26).) Pursuant to a briefing schedule set by the Court on November 13, 2014, (Dkt. No. 29),

Defendant filed his Motion to Dismiss and accompanying papers on December 18, 2014, (Dkt.

Nos. 32–33), Plaintiff submitted his opposition papers, which included two memoranda of law in

opposition to the Motion, on January 5, 2015, (Dkt. Nos. 36–38), and Defendant filed his reply

on January 9, 2015, (Dkt. No. 35). Plaintiff submitted a third memorandum of law in opposition

to the Motion on January 26, 2015. (Dkt. No. 39.)

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

6

[or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (internal quotation marks omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendants' Motion to Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (italics and internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) ("On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in his favor.").  Moreover, a pro se litigant's submissions "are held to less stringent

standards than [those] drafted by lawyers.  Courts liberally construe pleadings and briefs

submitted by pro se litigants, reading such submissions to raise the strongest arguments they

suggest." *Johnson v. Schriro*, No. 12-CV-7239, 2013 WL 5718474, at *2 (S.D.N.Y. Oct. 15,

2013) (alteration in original) (italics, internal quotation marks, and citation omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal

quotation marks omitted).  In deciding a motion to dismiss a pro se complaint, however, it is

appropriate to consider "materials outside the complaint to the extent that they are consistent

with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL

3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including

"documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-

4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), "allegations

contained in plaintiff['s] memorandum of law, at least where those allegations are consistent

with the allegations in the complaints," *Donahue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49

(S.D.N.Y. 1990), *abrogated on other grounds by Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004),

information provided in Plaintiff's affidavits, *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir.

1986) (considering pro se plaintiff's submitted memorandum and affidavits), and statements by

Plaintiff "submitted in response to defendants' request for a pre-motion conference," *Jones v.

Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013);

*see also Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8,

2013) ("Although the Court is typically confined to the allegations contained within the four

corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (internal quotation marks and citation omitted)).

### B.  Procedural Due Process Claim

#### 1.  Applicable Law

"[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration in original) (internal quotation marks omitted).  The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings.  *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment).  However, the Supreme Court has held that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The Second Circuit has explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test."  *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (internal quotation marks omitted).  The duration of confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of [Solitary Housing Unit ("SHU")] confinement automatically fails to implicate due process rights."  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks omitted).  Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of atypical and severe hardship,"

9

and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions." *Id.* (internal quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical.").

As a guidepost to determine whether due process protections are required in the prison context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (internal quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same). Moreover, "although shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest, [the Second Circuit has] explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65 (citation omitted). "The court may resolve the issue of atypicality as a matter of law only when the conditions are uncontested." *Houston v. Cotter*, 7 F. Supp. 3d 283, 297 (E.D.N.Y. 2014) (citing *Palmer*, 364 F.3d at 65). Indeed, the Second Circuit has cautioned that "[i]n the absence of a detailed factual record, [it has] affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65–66; *see also Houston*, 7 F. Supp. 3d at 298 (same).

Under the second prong, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). "Ordinarily, an 'inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" *Holland v. Goord*, 758 F.3d 215, 224–25 (2d Cir. 2014) (quoting *Wolff*, 418 U.S. at 566). "The right to call witnesses is limited in the prison context, however, 'by the penological need to provide swift discipline in individual cases' and 'by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff.'" *Id.* at 225 (quoting *Ponte v. Real*, 471 U.S. 491, 495 (1985)). Accordingly, "prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* (alteration and internal quotation marks omitted). Moreover, the Second Circuit has "stated that '[t]he Supreme Court . . . has suggested that a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity.'" *Id.* (alterations in original) (quoting *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30–31 (2d Cir. 1991)). Therefore, the Second Circuit has held that "[t]he refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right." *Id.* (citing *Russell v. Selsky*, 35 F.3d 55, 58–59 (2d Cir. 1994)).

However, "a prison official who refuses to call a requested witness has a constitutional obligation to explain to the prisoner-defendant why the witness was not allowed to testify."

*Abdur-Raheem*, 2015 WL 667528, at *7 (citing, inter alia, *Ponte*, 471 U.S. at 497); *see also*

*Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 114 (W.D.N.Y. 2011) (same).  "The reasons

need not be in writing, and may be provided at the disciplinary hearing itself or by presenting

testimony in court when there is later constitutional challenge to the hearing." *Abdur-Raheem*,

2015 WL 667528, at *7 (citing *Ponte*, 471 U.S. at 497).  Finally, "to establish a procedural due

process claim in connection with a prison disciplinary hearing, an inmate must show that he was

prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of

the hearing." *Colantuono*, 801 F. Supp. 2d at 114 (citing *Powell v. Coughlin*, 953 F.2d 744, 750

(2d Cir. 1991)).

## 2.  Application

Defendant argues that Plaintiff's due process claim must fail because although Plaintiff

alleges that he was in keeplock, he "fails to allege the period of time."  (Def. Royce's Mem. of

Law in Supp. of His Mot. To Dismiss the Second Am. Compl. ("Def.'s Mem.") 5 (Dkt. No. 33).)

While Plaintiff does not specifically allege the duration of his confinement as a result of the

disciplinary proceeding, the documents that Plaintiff attaches to his Second Amended Complaint,

which the Court properly considers in the instant Motion, provide relevant information.

Specifically, Plaintiff attaches a document titled "Superintendent Hearing Disposition

Rendered," which indicates that Defendant found Plaintiff guilty of "Interference with

Employee," "Refusing Direct Order," and a "Movement Regulation Violation."  (SAC Ex. A at

unnumbered 2.)  The penalties that Defendant imposed are recorded on the document, but they

are difficult to read in Plaintiff's filing.  (*Id.*)  Nevertheless, Plaintiff attaches another document

titled "Review of Superintendent's Hearing," which indicates that after review of Defendant's

decision, the reviewing officer noted that there was "no change in penalty," and Plaintiff was to

serve one month in keeplock.  (*Id.* at unnumbered 4.)[7]  Accordingly, even though Plaintiff fails to

allege the duration of his confinement, the Court assumes for the purpose of the instant Motion

that Plaintiff was in keeplock for one month.[8]

As explained above, the length of confinement is a factor that the Court considers in

determining whether disciplinary punishment "'imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life.'"  *Hanrahan*, 331 F.3d at 97 (quoting

*Sandin*, 515 U.S. at 484).  Here, Plaintiff's confinement of one month was relatively brief.  *See*

*Palmer*, 364 F.3d at 64–66 (indicating that an "intermediate duration" of confinement is

"between 101 and 305 days," and an "exceedingly short" period of confinement is "less

than . . . 30 days").  Indeed, the "[30]-day confinement is right at the cut-off suggested by [the

Second Circuit] for a presumptively typical confinement."  *Ellerbe v. Jasion*, No. 12-CV-580,

2015 WL 1064739, at *9 (D. Conn. Mar. 11, 2015).

Of course, the duration of Plaintiff's confinement is "not the only relevant factor," and

"[t]he conditions of confinement are a distinct and equally important consideration in

determining whether a confinement in SHU rises to the level of atypical and severe hardship."

*Palmer*, 364 F.3d at 64 (internal quotation marks omitted).  In his opposition papers, Plaintiff

states that he "suffer[ed] a significant hardship while being confined [in keeplock] because [he]

was in severe pain from the assault on him on [January 13, 2012]," and that the "condition of

[his] confinement along with [his condition] . . . were not normal conditions."  (Pl.'s Second

Mem. at unnumbered 3; *see also* Pl.'s Third Mem. 2 (explaining that Plaintiff "suffered from an

---

[7] Plaintiff also was given a one-month suspension of phone, commissary, and packages privileges.  (SAC Ex. A at unnumbered 4.)

[8] Defendant confirms in his moving papers that Plaintiff served 30 days in keeplock. (Def.'s Mem. 5.)

injury that was significantly injured during an earlier use of force, which cause[d] [him] greater discomfort").) Plaintiff further claims that he "was confined with a sever[e]ly injured back [and] neck condition," and that "[w]hile confin[e]d with these injuries[,] [P]laintiff's medical provider . . . saw and treated [P]laintiff." (Pl.'s Second Mem. at unnumbered 4.) In particular, Plaintiff states that his doctor placed him on Percocet on January 17, 2012 to help address "the severe pain and discomfort [that he] suffered because of the use of force on him on [January 13, 2012]." (Pl.'s Third Mem. 2.) Plaintiff further alleges that his "confinement differed . . . from general population because [his] constitutional rights were violated when [he] sought assist[a]nce in reporting being injured and because [he] alerted the nurse administrator of this and being in severe pain he was harass[ed] [and] threaten[ed] and retaliated against by superior officers and lock[ed] up . . . on [January 13, 2012]." (*Id.* at 3.) Plaintiff also points the Court to his medical records and an affidavit from Dr. John F. Waller, M.D. that he submitted in opposition to the Motion. (Pl.'s Second Mem. at unnumbered 3, 8–19.)

Even liberally construed and taking these claims as true, Plaintiff has failed to allege facts that plausibly establish that his confinement in keeplock was atypical. Plaintiff states that the conditions of his confinement were "not normal." (*Id.* at unnumbered 3). However, he does not explain how the conditions were atypical of the standard conditions in keeplock or prison life in general. *Cf. Ortiz*, 380 F.3d at 655 (explaining that based on allegations that "for at least part of his confinement, [the plaintiff] was kept in SHU for twenty-four hours a day, was not permitted an hour of daily exercise, and was prevented from showering for weeks at a time," the Second Circuit concluded "that, if proved, they could establish conditions in SHU far inferior to those prevailing in the prison in general" (internal quotation marks and citation omitted)). Although Plaintiff claims that he was in severe pain during his stay in keeplock, it is clear from his

14

allegations that the pain in his back and neck to which he refers stemmed from the January 13, 2012 incident, before he was disciplined.  Similarly, although Plaintiff states that his "confinement differed . . . from general population because [his] constitutional rights were violated when [P]laintiff sought assist[a]nce in reporting" his injury, (Pl.'s Third Mem. 3), Plaintiff refers to the incidents that occurred on January 13, 2012, before he was in keeplock. Plainly, because the alleged assault and events at the medical call happened not while Plaintiff was in keeplock, but rather before his penalty was imposed, the Court does not consider it in evaluating the conditions of his disciplinary confinement.  While it is possible that the conditions in keeplock exacerbated Plaintiff's medical condition or made the keeplock conditions atypical, Plaintiff fails to allege any facts to support such claims.  *See Judd v. Guynup*, No. 12-CV-58, 2012 WL 5472113, at *6 (N.D.N.Y. Oct. 17, 2012) (explaining that "the [c]ourt [would] not assume that the conditions of [the plaintiff's] confinement caused [the] [p]laintiff's medical issues [] [a]bsent some allegation establishing a causal connection between the [p]laintiff's medical problems and the conditions he endured while in segregative confinement"), *adopted by* 2012 WL 5471139 (N.D.N.Y. Nov. 9, 2012); *Johnson v. Wigger*, No. 07-CV-24, 2009 WL 2424186, at *9 (N.D.N.Y. Aug. 5, 2009) (noting that while the plaintiff "might argue that his allegations regarding the use of excessive force by the officers escorting him to the SHU tier suffice[,] . . . allegations of excessive force used en route to the SHU do not constitute severe SHU conditions, but rather are evaluated separately as Eighth Amendment claims against the individual officers" (italics omitted)).  Indeed, Plaintiff acknowledges that during his time in keeplock, he was treated by a medical provider and given medication for his pain.  (*See* Pl.'s Second Mem. at unnumbered 4; Pl.'s Third Mem. 2.)[9]

---

[9] Moreover, as Defendant points out, Dr. Waller's affidavit, which Plaintiff attaches to

These allegations do not plausibly suggest that "the conditions of the disciplinary segregation differ[ed] from other routine prison conditions." *Palmer*, 364 F.3d at 64 (internal quotation marks omitted). In other words, Plaintiff offers no allegations suggesting any reason "to believe that [he] would not have suffered from the very same medical ailments had he been confined to general population." *Judd*, 2012 WL 5472113, at *6. Accordingly, in light of Plaintiff's relatively brief confinement to keeplock and lack of factual allegations to support Plaintiff's conclusory statement that the conditions of his confinement were "not normal," (Pl.'s Second Mem. at unnumbered 3), or "differed . . . from general population," (Pl.'s Third Mem. 3), the Court grants Defendant's Motion to Dismiss Plaintiff's due process claim. *See Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at *15 (S.D.N.Y. Sept. 29, 2014) (noting that "a number of courts in [the Second Circuit] . . . have dismissed claims in which plaintiffs alleged spending between [40] and [50] days in punitive segregation or faced other comparable discipline[,] . . . conclud[ing] that, in the absence of some allegation that the conditions of keeplock or SHU confinement were in some way unusual, plaintiffs had failed to allege the violation of a protected liberty interest" (internal quotation marks omitted)) (collecting cases); *O'Diah v. Artus*, No. 10-CV-6705, 2013 WL 1681834, at *2–3 (W.D.N.Y. Apr. 17, 2013) (explaining that because the plaintiff, who was confined for 111 days, "failed to allege facts showing that the conditions of his confinement, combined with the duration of his confinement, created an atypical and significant hardship," his due process claim failed and noting that "[a] claim based on harsh conditions of confinement may require a fact-intensive inquiry, but to

---

his second memorandum in opposition to the Motion, states that Plaintiff's pre-existing back condition was not exacerbated by the January 13, 2012 incident and that Plaintiff did not otherwise suffer injury as a result of the incident. (Pl.'s Second Mem. at unnumbered 11.) The affidavit, then, does not support, but rather casts doubt on, whether Plaintiff was severely injured during his confinement in keeplock. Nevertheless, because the affidavit is not consistent with Plaintiff's claims, the Court does not consider it on the instant Motion.

survive a motion to dismiss, the plaintiff must still plead a facially plausible claim" (internal quotation marks omitted)); *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *10 (S.D.N.Y. Mar. 8, 2012) (explaining that "[s]everal courts have concluded that, absent unusual conditions, 30 days of segregation is not an atypical or significant hardship under *Sandin*") (collecting cases); *Torres v. Logan*, No. 10-CV-6951, 2011 WL 1811003, at *4 (S.D.N.Y. May 11, 2011) (dismissing the plaintiff's due process claim where he alleged that he was confined for "a little over two-thirds of the 90 days sentence" because the plaintiff "fail[ed] to allege any facts regarding the conditions of his confinement, including whether they were abnormal or unusual" (alteration and internal quotation marks omitted)), *adopted by* 2011 WL 3894386 (S.D.N.Y. June 13, 2011); *cf. Palmer*, 364 F.3d at 65–66 (explaining that "[i]n the absence of a detailed factual record, [the Second Circuit has] affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—*and there was no indication that the plaintiff endured unusual SHU conditions*" (emphasis added)).[10]

 "Because . . . Plaintiff has failed to allege a liberty interest, it is not necessary to reach the issue of whether he was provided sufficient process in the hearing on the allegedly fabricated charges." *Jean-Laurent v. Lane*, No. 11-CV-186, 2013 WL 600213, at *18 (N.D.N.Y. Jan. 24, 2013), *adopted by* 2013 WL 599893 (N.D.N.Y. Feb. 15, 2013).  Nevertheless, in light of Plaintiff's pro se status, Plaintiff is granted leave to amend his Second Amended Complaint to allege facts regarding the conditions of his confinement. *See Torres*, 2011 WL 1811003, at *4 (recommending that the plaintiff be granted leave to amend his due process claim "to the extent

---

 [10] The fact that Plaintiff also forfeited his phone, commissary, and package privileges, without more, does not change this result. *See Judd*, 2012 WL 5472113, at *6 ("Here[,] [p]laintiff has merely noted that he lost these privileges, he has not alleged that such losses were in any way more severe than the losses faced by other SHU detainees.").

that there are facts indicating he was subjected to abnormal or unusual segregation conditions");

*Shuler v. Brown*, No. 07-CV-937, 2009 WL 790973, at \*8–9 (N.D.N.Y. Mar. 23, 2009)

(recommending that the plaintiff's due process claim in which he only alleged that he was

confined in keeplock for 60 days be dismissed with leave to amend).

### C.  Eighth Amendment Claim

#### 1.  Applicable Law

"The conditions of a prisoner's confinement can give rise to an Eighth Amendment

violation."  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002).  "In such cases, a prisoner

may prevail only where he proves both an objective element—that the prison officials'

transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or

omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to

inmate health or safety.'"  *Id.* (italics omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834

(1994)).  Under the "objective" requirement, a plaintiff must show that "the conditions, either

alone or in combination, pose an unreasonable risk of serious damage to [an inmate's] health,"

which can be satisfied if an inmate is deprived of "basic human needs such as food, clothing,

medical care, and safe and sanitary living conditions."  *Walker v. Schult*, 717 F.3d 119, 125 (2d

Cir. 2013) (internal quotation marks omitted).  "[T]o establish the objective element of an

Eight[h] Amendment claim, a prisoner must prove that the conditions of his confinement violate

contemporary standards of decency."  *Phelps*, 308 F.3d at 185.

Under the "subjective" requirement, a defendant "'cannot be found liable under the

Eighth Amendment for denying an inmate humane conditions of confinement unless the official

knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.'" *Id.* at 185–86 (quoting *Farmer*, 511 U.S. at 837). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *see also Abdur-Raheem*, 2015 WL 667528, at *4 (same); *Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *17 (E.D.N.Y. Aug. 20, 2014) (same).

Finally, as the Second Circuit has made clear, "[p]roof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983." *Gaston*, 249 F.3d at 164. "Personal involvement may be established by evidence of direct participation in the challenged conduct, or by evidence of a supervisory official's '(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.'" *Reid*, 2014 WL 4185195, at *12 (some internal quotation marks omitted) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003)).

## 2. Application

Plaintiff alleges that Defendant violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment. (SAC ¶¶ 20–21.) In particular, Plaintiff claims that Defendant "cause[d] [him] severe pain stem[m]ing from both physical injuries and the denial of procedural [and] substantive due process with his actions to [] conspir[e] with witnesses he call[ed] to testify on record at the [Tier] III hearing." (*Id.* ¶ 40.) Nothing in the Second Amended Complaint,

19

however, suggests that Defendant was directly or indirectly involved in causing any physical injury or pain to Plaintiff.  Rather, the allegations make clear that the injuries Plaintiff sustained were inflicted by Jones, *before* Defendant conducted the Hearing.  In connection with his conspiracy claim, discussed below, Plaintiff alleges that Defendant "knew about the wrong, but did not try to stop or fix it and failed to oversee the people who caused the wrong."  (*Id.* ¶ 14.) Even assuming Defendant's supervisory status, however, the Second Amended Complaint and accompanying papers do not plausibly allege that Defendant failed to "'act on information regarding the [allegedly] unlawful conduct'" of Jones and other officers or otherwise acted with "'gross negligence.'"  *Reid*, 2014 WL 4185195, at *12 (quoting *Hayut*, 352 F.3d at 753).  Simply put, there are no specific allegations that Defendant knew that Jones or any other officer might assault or otherwise mistreat Plaintiff.  Thus, even if Defendant allegedly failed to conduct a fair hearing, there is nothing about that claim that would have prevented the alleged attack on Plaintiff.  This alone is reason enough to dismiss this claim.

Moreover, while it is clear that Plaintiff alleges that Defendant was personally involved in a conspiracy to deprive him of due process and did in fact deprive him of due process, Plaintiff does not contend that "the conditions [at the Hearing or in keeplock], either alone or in combination, pose[d] an unreasonable risk of serious damage to his health."  *Walker*, 717 F.3d at 125.  As explained above, Plaintiff does not contend that his confinement in keeplock contributed to or otherwise exacerbated his back and neck pain, which allegedly resulted from Jones's assault.  Nor has Plaintiff alleged that he was deprived of basic human needs while he was confined.  *See id.* ("[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." (internal

20

quotation marks omitted)).  In short, the gravamen of Plaintiff's claims is that Defendant refused

to call Young or otherwise credit certain testimony at the Hearing before sentencing Plaintiff to

keeplock.  There is nothing to suggest that Defendant's actions at the Hearing or the fact that

Defendant imposed a penalty of 30 days in keeplock were "sufficiently serious," so as to meet

the objective prong of an Eighth Amendment claim.   As other courts have recognized,

"[g]enerally, administrative segregation conditions, even though 'restrictive and harsh, are

insufficient to establish Eighth Amendment violations because they are part of the penalty that

criminal offenders pay for their offenses against society.'"  *Tavares v. Amato*, 954 F. Supp. 2d

79, 92 (N.D.N.Y. 2013) (alterations omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347

(1981)); *see also Bowens v. Smith*, No. 11-CV-784, 2013 WL 103575, at *10 (N.D.N.Y. Jan. 8,

2013) ("Confinement in SHU, in itself, notwithstanding its additional restrictions on inmates, has

not been held to constitute cruel and unusual punishment."), *adopted by* 2013 WL 103596

(N.D.N.Y. Jan. 8, 2013).[11]  Because Plaintiff fails to set forth facts that plausibly allege that the

conditions of keeplock were "sufficiently serious" to meet the objective prong of an Eighth

Amendment claim, the claim is dismissed.

---

[11] To the extent Plaintiff "complains that the punishment was cruel and unusual because
he was innocent of the charge[s]," this claim fails, because, "'[i]n general, allegations that
procedural irregularities occurred during an inmate's disciplinary proceeding do not involve the
Eighth Amendment's protection against the unnecessary and wanton infliction of pain.'"
*Husbands v. McClellan*, 957 F. Supp. 403, 408 n.2 (W.D.N.Y. 1997) (alteration and some
internal quotation marks omitted) (quoting *Ricker v. Leapley*, 25 F.3d 1406, 1411 (8th Cir.
1994)), *motion to amend judgment denied by* 990 F. Supp. 214 (W.D.N.Y. 1998); *cf. Khalid v.
Reda*, No. 00-CV-7691, 2003 WL 42145, at *6 (S.D.N.Y. Jan. 23, 2003) (dismissing Eighth
Amendment claim alleging that the defendant's forgery of documents, which led to a delayed
prison disciplinary hearing, was cruel and unusual punishment in that it resulted in his unlawful
confinement in SHU, because the plaintiff failed to allege that SHU conditions denied the
"minimal civilized measure of life's necessities" (internal quotation marks omitted)).

D.  Equal Protection Claim

1.  Applicable Law

"The Equal Protection Clause has traditionally been applied to governmental classifications that treat certain *groups* of citizens differently than others."  *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 291 (2d Cir. 2013).  "Where, as here, a plaintiff does not claim to be a member of a constitutionally protected class, he may bring an Equal Protection claim pursuant to one of two theories: (1) selective enforcement, or (2) class of one."  *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 544 (S.D.N.Y. 2014) (same).  To state an equal protection claim "on a theory of selective enforcement or selective treatment, a plaintiff must show that (1) 'he, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff.'"  *Vaher*, 916 F. Supp. 2d at 433 (alterations omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).  To allege an Equal Protection Clause violation under a class-of-one theory, "the plaintiff must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake."  *Fahs Constr. Grp., Inc.*, 725 F.3d at 292 (internal quotation marks omitted).  In other words, "a plaintiff asserting a 'class of one' equal protection claim must allege that the intentional disparate treatment alleged to state the first element of the claim was wholly arbitrary

or irrational." *Vaher*, 916 F. Supp. 2d at 433 (some internal quotation marks omitted).  Under

either theory, a "[p]laintiff is required to allege differential treatment from similarly situated

individuals in order to state a viable equal protection claim." *Id.* at 433–34 (internal quotation

marks omitted).

### 2.  Application

Plaintiff does not claim to be a member of a protected class in his Second Amended

Complaint.  Rather, Plaintiff alleges that he "was not only treated differently, but single[d] out as

an individual for arbitrary and irrational treatment."  (SAC ¶ 24.)  Accordingly, the Court

construes the claim as an Equal Protection claim under a theory of selective enforcement or a

"class of one" theory.  Under either theory, however, Plaintiff's claim fails because he does not

specifically "allege differential treatment from similarly situated individuals." *Vaher*, 916 F.

Supp. 2d at 433–34 (internal quotation marks omitted).  Indeed, the Second Amended Complaint

"does not allege that [Plaintiff] was treated differently from *any* identified individuals, let alone

individuals who he claims were similarly situated to him in any respect" and "is completely

devoid of any reference to 'similarly situated' or 'substantially similar' individuals." *Id.* at 434–

35 (dismissing the plaintiff's equal protection claim under theories of selective enforcement and

class of one where the plaintiff "simply" alleged that the defendants "singled out [the] plaintiff,

in part, because of his exercise of constitutional rights" (internal quotation marks omitted)); *see

also Butler v. Bridgehampton Fire Dist.*, No. 14-CV-1429, 2015 WL 1396442, at *4–5

(E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim under the selective

enforcement and class of one theories because the complaint "only discusse[d] the harmful

actions [the defendants] took with respect to [the] [p]laintiff, but there [was] no discussion

whatsoever of any similarities between [the] [p]laintiff and others"); *Jones v. Bay Shore Union*

*Free Sch. Dist.*, 947 F. Supp. 2d 270, 280 (E.D.N.Y. 2013) (holding that the plaintiff's

conclusory allegation that "he was treated differently from all other similarly situated residents

of the [s]chool [d]istrict" did not constitute an allegation of "facts showing that he [was]

similarly situated to other persons with respect to the specific incident or incidents that [were]

alleged to be examples of differential treatment" and, therefore, dismissing the plaintiff's equal

protection claim (internal quotation marks omitted)).  Accordingly, because Plaintiff fails to

allege that he was treated differently from similarly situated individuals, his equal protection

claim is dismissed.

> E.  Conspiracy Claim

> > 1.  Applicable Law

Claims for conspiracy to violate civil rights, even if brought under 42 U.S.C. § 1983,

"should actually be stated as a claim under Section 1985, which applies to conspiracies."  *Webb*

*v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  Plaintiff's Second Amended Complaint can be

construed as alleging a conspiracy claim under either the second clause of 42 U.S.C. § 1985(2)

or § 1985(3).[12]  Section 1985(2) "renders actionable (1) a conspiracy[,] (2) for the purpose of

impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any

State or Territory, (4) with intent to deny to any citizen the equal protection of the laws, or to

injure him or his property for lawfully enforcing, or attempting to enforce, the right of any

person, or class of persons, to the equal protection of the laws."  *Rodriguez v. City of N.Y.*, No.

05-CV-10682, 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008).[13]  "Title 42 U.S.C.

---

[12] The first clause of § 1985(2) addresses claims for conspiracy to threaten witnesses or jurors in *federal* judicial proceedings, which is not at issue in this case.

[13] The Court assumes for purposes of this Opinion that Plaintiff's disciplinary hearing satisfies the requirement of §1985(2) that the conspiracy affected "the due course of justice in

§ 1985(3) prohibits, in pertinent part, conspiracies undertaken 'for the purpose of depriving,

either directly or indirectly, any person or class of persons of the equal protection of the laws, or

of equal privileges or immunities under the laws.'"  *Jews for Jesus, Inc. v. Jewish Cmty.*

*Relations Council of N.Y., Inc.*, 968 F.2d 286, 290 (2d Cir. 1992) (quoting 42 U.S.C. § 1985(3)).

"The elements of a claim under § 1985(3) are: (1) a conspiracy; (2) for the purpose of depriving,

either directly or indirectly, any person or class of persons of equal protection of the laws, . . . ;

(3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a

citizen of the United States."  *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 1999)

(alterations in original) (internal quotation marks omitted); *see also Turkmen v. Hasty*, 789 F.3d

218, 262 (2d Cir. 2015) (same); *Bliss v. Rochester City Sch. Dist.*, 196 F. Supp. 2d 314, 337

(W.D.N.Y. Mar. 28, 2002) (same), *aff'd*, 103 F. App'x 421 (2d Cir. 2004).  Both claims "require

a showing of class-based invidiously discriminatory animus" on the part of the conspiring

parties.  *Hickey v. City of N.Y.*, No. 01-CV-6506, 2004 WL 2724079, at *22 (S.D.N.Y. Nov. 29,

2004), *aff'd*, 173 F. App'x 893 (2d Cir. 2006); *see also Turkmen*, 789 F.3d at 262 ("[A Section

1985(3)] claim requires that there must be some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators' action." (internal quotation marks

omitted)); *Nansaram v. City of N.Y.*, No. 12-CV-5038, 2015 WL 5475496, at *14 (E.D.N.Y. July

2, 2015) ("To the extent that plaintiff's section 1985 claim relies on the second clause of section

1985(2) [instead of section 1985(3)], . . . that claim likewise requires discriminatory

animus . . . ."), *adopted by* 2015 WL 5518270 (E.D.N.Y. Sept. 17, 2015).  Additionally, "a

plaintiff must provide some factual basis supporting a meeting of the minds, such that [the]

---

any State or Territory."  The Court notes, however, that the Supreme Court has described this
subsection of § 1985(2) as applying "to conspiracies to obstruct the course of justice in state
*courts*."  *Kush v. Rutledge*, 460 U.S. 719, 725 (1983) (emphasis added).

defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb*, 340 F.3d at 110 (internal quotation marks omitted); *see also Rodriguez*, 2008 WL 4410089, at *15 (granting defendants' motion for summary judgment on §§ 1985(2) and (3) claims because no reasonable jury could find "that an agreement—tacit or otherwise—existed among any of the defendants to either inflict an unconstitutional injury or to achieve an unlawful end" (internal quotation marks omitted)). "[C]laims of conspiracy that are vague and provide no basis in fact must be dismissed." *Van Dunk v. St. Lawrence*, 604 F. Supp. 2d 654, 663 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Lastra v. Barnes and Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *6–7 (S.D.N.Y. Jan. 3, 2012) (dismissing §§ 1985(2) and (3) claims because "[c]onclusory allegations of the defendants' alleged participation in a conspiracy [we]re inadequate to make out a claim under § 1985"), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

### 2.  Application

Plaintiff alleges that Defendant "was personally involved in conspiring with witnesses he personally call[ed] to testify at the [Hearing]" and that he "acted in concert [with Jones, Hamburg, and Tokarz ] to violate" Plaintiff's rights.  (SAC ¶ 14.)  Plaintiff claims that "[t]he record . . . of the [Hearing] will clearly show that . . . Defendant . . . personally involved hi[mself] in conspiring with his witnesses[] that he call[ed] to testify against [P]laintiff," and that Hamburg and Jones "gave different testimony concerning the assault that resulted in [Plaintiff's] . . . permanent injury to his neck and lower spine."  (*Id.* ¶ 26.)  Plaintiff further explains that the tape of the Hearing shows that Plaintiff was confined at 5:10 p.m., specifically that Jones told Tokarz "about the use of force on [P]laintiff at 7:10 p[.]m[.]" and Tokarz "then state[d] to . . . Jones to write a[n] incident report after 7 p[.]m[.] in which . . . the report . . . clearly states

26

that [P]laintiff was confined at 5:10 p[.]m[.] on [January 13, 2012,] . . . which resulted in a conspiracy between . . . Jones [and] . . . Tokarz and Defendant." (*Id.*)

To begin, Plaintiff does not allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind [Defendant's] action[s]." *Turkmen*, 789 F.3d at 262 (internal quotation marks omitted); *see also Hickey*, 2004 WL 2724079, at *22 (same). Further, Plaintiff does not provide any specific facts to plausibly suggest that Defendant "entered into an agreement, express or tacit, to achieve [an] unlawful end." *Webb*, 340 F.3d at 110. Instead, Plaintiff merely states that Defendant was involved in conspiring with the witnesses he called to testify at the Hearing. Although Plaintiff points to the record of the Hearing, Plaintiff fails to explain or otherwise allege how the record supports his conspiracy claim. Moreover, even liberally construing Plaintiff's allegations that Jones and Tokarz engaged in conversation about the incident on January 13, 2012, Plaintiff does not explain how Defendant entered into any agreement or understanding that they may have formed. In short, because Plaintiff fails to offer specific facts to suggest that Defendant and witnesses at the Hearing agreed to conspire against Plaintiff, the conspiracy claim is dismissed. *See Webb*, 340 F.3d at 111 (affirming the district court's dismissal of the plaintiffs' conspiracy claim because "[t]he plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants"); *Bermudez v. City of N.Y.*, No. 11-CV-750, 2013 WL 593791, at *8–9 (S.D.N.Y. Feb. 14, 2013) (dismissing a conspiracy claim because "[w]hile [the] [p]laintiff allege[d] certain wrongdoings committed by [the defendants] . . . nothing in the [a]mended [c]omplaint plausibly suggest[ed] that these acts were done in furtherance of an agreed upon conspiracy" (citations omitted)); *Lastra*, 2012 WL 12876, at *7 (noting that "[u]nsubstantiated, conclusory, vague[,] or general allegations of a conspiracy" are insufficient to state a claim under

§§ 1985(2) or (3)); *Van Dunk*, 604 F. Supp. 2d at 663 ("[C]laims of conspiracy that are vague and provide no basis in fact must be dismissed." (internal quotation marks omitted)).

    F.  Substantive Due Process Claim

        1.  Applicable Law

Plaintiff claims that his substantive due process rights were violated.  (SAC ¶¶ 22–23.) "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted).  "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks omitted).

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395); *see also Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (same).  Nevertheless, *Graham* did not "hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

### 2. Application

Plaintiff alleges that Defendant's actions "were totally illegal as a matter of law" and "were not only indifferent toward [P]laintiff, [but also] . . . intentional and[/]or purposeful discrimination." (SAC ¶ 23.) "Because [Plaintiff's] deliberate indifference claim is covered by the Eighth Amendment, the substantive due process claim[] [is] duplicative under the rule articulated by . . . *Albright* and . . . *Graham* . . . ." *Madison v. Mazzuca*, No. 02-CV-10299, 2004 WL 3037730, at *11 (S.D.N.Y. Dec. 30, 2004). Likewise, to the extent Plaintiff alleges his substantive due process rights were violated because Defendant's actions amounted to "intentional and[/]or purposeful discrimination," (SAC ¶ 23), the claim is covered by the Equal Protection Clause. *See Segreto v. Town of Islip*, 12-CV-1961, 2014 WL 737531, at *5 (E.D.N.Y. Feb. 24, 2014) ("[C]ourts in this circuit have held that, where a substantive due process claim is duplicative of an equal protection claim, the substantive due process claim should be dismissed." (citing, inter alia, *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1351 n.8 (2d Cir. 1994))). Finally, Plaintiff's claims that Defendant refused to call or credit certain witnesses or properly evaluate the evidence at the Hearing are allegations covered by the Due Process Clause of the Fourteenth Amendment. Therefore, the substantive due process claim is dismissed as duplicative of the claims Plaintiff has asserted in the Second Amended Complaint. *See Rother v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) (dismissing substantive due process claim where it "s[ought] to remedy the same harm and challenge[d] the same conduct" as plaintiff's procedural due process claim); *Roman v. Velleca*, No. 11-CV-1867, 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012) ("[S]ubstantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources.").

In any event, even if the Court were to consider Plaintiff's substantive due process claim separately, Plaintiff has not alleged facts that suggest Defendant's actions in this case were "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience." *Okin*, 577 F.3d at 431 (internal quotation marks omitted). Instead, at most, Plaintiff's allegations suggest that Defendant's refusal to allow Young to testify in person, rather than submit an affidavit, or credit certain testimony was "incorrect or ill-advised," *Lowrance*, 20 F.3d at 537 (internal quotation marks omitted), and therefore does not amount to a substantive due process violation.

## III. Conclusion

In light of the foregoing analysis, the Court grants Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 32.) Plaintiff may file a Third Amended Complaint within 30 days of the date of this Order.

SO ORDERED.

DATED:  December  1 , 2015
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE