UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY AIKENS,

                     Plaintiff,

   -v-

CAPTAIN ROYCE,

                     Defendant.

No. 14-CV-663 (KMK)

OPINION & ORDER

Appearances:

Anthony Aikens
Attica, NY
*Pro Se Plaintiff*

Rebecca A. Durden, Esq.
New York State Department of Law Litigation
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Anthony Aikens ("Plaintiff") filed the instant Action pursuant to 42 U.S.C. §§ 1983 and 1985, against Deputy Superintendent Royce ("Defendant").[1]  Plaintiff alleges that Defendant violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution by refusing to allow witnesses to testify on Plaintiff's behalf at a Tier III disciplinary hearing, subjecting him to keeplock as a result of the hearing, and conspiring with other officers to deprive Plaintiff of his rights.  (*See* Third Am. Compl. ("TAC") (Dkt. No. 44).)  Before the Court is Defendant's Motion To Dismiss the Third Amended Complaint

---

[1] At all times relevant to the matter before this Court, Defendant's title was "Captain." He has since been promoted to Deputy Superintendent.  (*See* Def.'s Mem. of Law in Supp. of Mot. To Dismiss the Third Am. Compl. 1 n.1 (Dkt. No. 55).)

pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Dkt. No. 54.) For the following reasons, Defendant's Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Third Amended Complaint, the documents appended thereto, and the filings that Plaintiff submitted in opposition to the instant Motion, and are taken as true for the purpose of resolving the Motion. At the time of the incidents alleged in Plaintiff's Third Amended Complaint, Plaintiff was an inmate at Green Haven Correctional Facility. (TAC ¶ 2.) On January 13, 2012, at approximately 5:30 p.m., Plaintiff was assaulted by Sgt. M. Jones ("Jones"). (*See, e.g.*, *id.* ¶¶ 4, 5, 8, 36.) Plaintiff alleges that the incident caused him to reinjure a pre-existing back injury. (*See, e.g.*, *id.* ¶¶ 5, 38.)[2]

Around 7 p.m. that evening, Plaintiff informed the Nurse Administrator that he was in pain from the earlier incident and that he wanted to report the assault. (*See, e.g.*, *id.* ¶¶ 4, 6, 8.) Shortly thereafter, Lt. Tokarz was informed about Plaintiff's reporting of the incident and "gave direction[s] to . . . Jones to write a misbehavior report" on Plaintiff based on the incident. (*Id.* ¶ 8.) Plaintiff "was harass[ed] [and] threaten[ed] by Lt. Tokarz and lock[ed] up for reporting being injured." (*Id.* ¶ 6; *see also id.* ¶ 26.) Plaintiff was placed in keeplock and remained there

---

[2] Plaintiff's Third Amended Complaint refers to a "medical-record report by John F. Waller M.D." (*See, e.g.*, TAC ¶ 19.) Plaintiff attached to one of his memoranda in opposition to Defendant's Motion To Dismiss the Second Amended Complaint an affidavit from John F. Waller, M.D., which is captioned as *Anthony Aikens v. Sgt. M. Jones, et al.*, No. 12-CV-1023. (*See* Pl.'s Mem. of Law in Supp. Not To Dismiss the Second Am. Compl. at unnumbered 8–11 (Dkt. No. 38).) In the affidavit, which Plaintiff did not attach to the Third Amended Complaint or his memoranda in opposition to the instant Motion, Dr. Waller states that Plaintiff suffers from a pre-existing chronic back and neck condition from an incident in August 1999, (*id.* at unnumbered 9), contrary to Plaintiff's allegations, he was not injured during the January 13, 2012 incident, (*id.* at unnumbered 10), and that his pre-existing condition was not exacerbated by the incident, (*id.* at unnumbered 11).

prior to a Tier III hearing (the "Hearing") to address the misbehavior report. (*See id.* ¶¶ 4, 6, 26, 38.) Plaintiff alleges that his back pain was so severe when he was put in keeplock that he could not sleep or exercise for four and a half days, until he was given pain medication on January 17, 2012. (*See, e.g.*, *id.* ¶¶ 11–12, 21–22; Pl.'s Opp'n Mot. Not To Dismiss the Third Am. Compl. ("Pl.'s First Opp'n") ¶ 4 (Dkt. No. 60); Pl.'s Mem. of Law in Supp. Not To Dismiss the Third Am. Compl. ("Pl.'s Second Opp'n") 2, 7 (Dkt. No. 66).)[3] On January 17, Plaintiff received a shot of toradol and two tablets of Percocet to address his severe back pain. (*See* TAC ¶ 12.)

Defendant presided over the Hearing, which began on January 20, 2012. (*Id.* ¶ 4.) At the beginning of the Hearing, Plaintiff "informed [Defendant] that the misbehavior report was written in retaliation for reporting [the assault] on Plaintiff by . . . Jones to the Nurse Administrator." (*Id.* ¶ 4; *see also* Pl.'s Second Opp'n 2.) Plaintiff also informed Defendant that "he was threaten[ed]" and that he suffered "from a pre-existing spinal injury that was reinjured during the use of force." (TAC ¶¶ 4–6.) Plaintiff alleges that Defendant denied Plaintiff the opportunity to call two witnesses—the Nurse Administrator to whom he reported the assault and a fellow inmate Willie Young—in his defense at the Hearing. (*Id.* ¶¶ 6, 8.) Plaintiff alleges that the witnesses would have "state[d] exactly what happen[ed] on [January 13, 2012] and . . . would testify that" Plaintiff went to the medical clinic at 7 p.m. that evening. (*Id.* ¶ 6.)[4] Rather than

---

[3] Some of Plaintiff's allegations state that his inability to sleep or exercise lasted only from January 13 to January 17, at which point he was given pain medication. (*See, e.g.*, TAC ¶ 12 ("[B]ecause of the severe pain he was in[,] Plaintiff could not sleep from the evening of [January 13] [u]ntil[] he saw his medical provider . . . on [January 17]."); Pl.'s Second Opp'n 7 ("Plaintiff[']s sleep deprivation lasted . . . four and a half days [u]ntil[] he receive[d] medication for severe pain on [January 17].").) However, some allegations appear to state that such pain lasted throughout his confinement. (*See, e.g.*, TAC ¶ 11 ("Plaintiff suffered without sleep for 96 hours and more.").)

[4] Plaintiff alleges that Willie Young gave him a sworn statement in lieu of testimony. (*See* TAC ¶ 8.)

3

allow Plaintiff's witnesses to testify, Defendant called his own witnesses—C.O. Hamburg and Jones—"and conspired with them after two different descriptions of the use of force [were] given on [the] record" by those witnesses. (*Id.* ¶ 7; *see also id.* ¶ 29.) On February 6, 2012, Defendant found Plaintiff guilty and sentenced him to "[30] days [in] keeplock with loss of privileges." (*See id.* ¶ 9.)

B. Procedural History

Plaintiff filed the original Complaint on January 27, 2014. (Dkt. No. 2.) On September 18, 2014, Plaintiff submitted a Notice of Motion for Summary Judgment. (Dkt. No. 25.) Attached to the Motion, Plaintiff submitted a Second Amended Complaint with attached exhibits alleging violations of the Eighth and Fourteenth Amendments. (*See id.*) In an order dated September 26, 2014, the Court denied Plaintiff's Motion for Summary Judgment without prejudice, finding that it was premature, "as Plaintiff first filed his 'Second Amended Complaint' along with his Motion, and Defendant ha[d] not yet responded to th[at] filing." (Dkt. No. 26.) Defendant filed a Motion To Dismiss the Second Amended Complaint and accompanying papers on December 18, 2014, and that Motion was fully submitted on January 26, 2015. (*See* Dkt. Nos. 32–39.)

On December 1, 2015, the Court issued an Opinion and Order (the "Opinion") granting Defendant's Motion To Dismiss the Second Amended Complaint. (*See* December 1, 2015 Opinion & Order ("Opinion") 30 (Dkt. No. 43).) The Court liberally construed Plaintiff's Second Amended Complaint as alleging violations of his rights to procedural and substantive due process, equal protection, and freedom from cruel and unusual punishment, as well as a conspiracy claim pursuant to 42 U.S.C. § 1985. (*See generally id.*) The Court's dismissal was without prejudice and provided Plaintiff 30 days to file a Third Amended Complaint. (*Id.* at 30.)

Plaintiff filed his Third Amended Complaint on December 15, 2015.  (Dkt. No. 44.)  Pursuant to a briefing schedule ordered by the Court on January 13, 2016, (Dkt. No. 51), Defendant filed his Motion and accompanying papers on February 8, 2016, (Dkt. Nos. 54–55).  Plaintiff filed a memorandum in opposition to the Motion on February 25, 2016.  (*See* Pl.'s First Opp'n.)[5]  On April 8, 2016, Plaintiff filed an additional memorandum in opposition to the Motion.  (*See* Pl.'s Second Opp'n.)  On April 11, 2016, Defendant filed a letter informing the Court he would not be filing a reply brief.  (*See* Dkt. No. 67.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (internal quotation marks omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

---

[5] Plaintiff re-filed a nearly identical memorandum in opposition on March 11, 2016.  (*See* Dkt. No. 64.)

experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendant's Motion, the Court is required to consider as true the factual allegations contained in the Third Amended Complaint and to draw all reasonable inferences in Plaintiff's favor. *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (italics and internal quotation marks omitted)). Moreover, a pro se litigant's submissions "are held to less stringent standards than [those] drafted by lawyers. Courts liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Johnson v. Schriro*, No. 12-CV-7239, 2013 WL 5718474, at *2 (S.D.N.Y. Oct. 15, 2013) (alteration in original) (italics, internal quotation marks, and citation omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). In deciding a motion to dismiss a pro se complaint, however, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including

"documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), "allegations contained in plaintiff['s] memorandum of law, at least where those allegations are consistent with the allegations in the complaint," *Donahue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990), *abrogated on other grounds by Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), information provided in Plaintiff's affidavits, *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986) (considering pro se plaintiff's submitted memorandum and affidavits), and statements by Plaintiff "submitted in response to [D]efendant['s] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013); *see also Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (internal quotation marks and citation omitted)).

### B.  Procedural Due Process Claim

Plaintiff argues that his procedural due process rights were violated when he was sentenced to 30 days in keeplock after the Hearing at which Defendant both denied Plaintiff the opportunity to call witnesses and conspired with other witnesses.  (*See* TAC ¶¶ 25, 37.) Plaintiff's procedural due process claim suffers from the same fatal deficiency the Court identified in the claim's prior form, namely that he has not sufficiently alleged a protected liberty interest because he does not allege that his 30-day keeplock sentence imposed an atypical and severe hardship.  (*See* Order 16–17.)[6]

---

[6] As explained in the Court's prior Opinion, "to present a due process claim, a plaintiff

Because Plaintiff's "confinement of one month was relatively brief," and such a one-month confinement "is right at the cut-off suggested by the Second Circuit for a presumptively typical confinement," (*id.* at 13 (alteration and internal quotation marks omitted)), the Court in its prior Opinion considered whether the *conditions* of Plaintiff's confinement were such that the one-month confinement rose "to the level of atypical and severe hardship," (*id.* at 13–14 (internal quotation marks omitted)). Plaintiff alleged that his confinement was atypical and that he suffered a significant hardship because he was confined in keeplock while he was in severe pain from the earlier alleged assault by Jones. (*Id.*) Specifically, "[a]lthough Plaintiff claim[ed] that he was in severe pain during his stay in keeplock, it [was] clear from his allegations that the pain in his back and neck to which he refer[red] stemmed from the January 13, 2012 incident, before he was disciplined." (*Id.* at 14–15.) The Court noted that "it is possible that the conditions in

---

must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration in original) (internal quotation marks omitted). Although inmates retain due process rights in prison disciplinary proceedings, *see Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment), the Supreme Court has held that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).
  The Second Circuit has explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (internal quotation marks omitted). The duration of confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of [Solitary Housing Unit ("SHU")] confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks omitted). Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions." *Id.* (internal quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical.").

keeplock exacerbated Plaintiff's medical condition or made the keeplock conditions atypical, [but that] Plaintiff fail[ed] to allege any facts to support such claims." (*Id.* at 15.) Ultimately, therefore, the Court dismissed Plaintiff's procedural due process claim on the grounds that Plaintiff's confinement in keeplock was "relatively brief" and he "failed to allege facts that plausibly establish[ed] that his confinement in keeplock was atypical." (*Id.* at 14, 16.)

Although the Court invited Plaintiff to allege facts showing that the conditions in keeplock exacerbated his medical condition, he has failed to do so. Rather, Plaintiff's Third Amended Complaint and memoranda opposing the instant Motion once again complain only of injuries and pain that existed at the time he was placed into keeplock. For example, Plaintiff alleges that the use of force against him on January 13 "left . . . Plaintiff in severe pain during his confinement," (TAC ¶ 39), and that "the conditions of his []lumbar spine[] . . . made it impossible for him to fall asleep or exercise . . . [f]rom the day of the incident [on January 13] . . . ," (Pl.'s Second Opp'n 2).[7]

Plaintiff makes a number of references to the fact that he could not sleep or exercise during his confinement, and argues that this renders the conditions of his confinement atypical. (*See, e.g.*, TAC ¶¶ 11–13, 22–23; Pl.'s First Opp'n ¶¶ 3–4; Pl.'s Second Opp'n 2, 7.) Plaintiff is correct that being denied the opportunity to exercise as a condition of confinement may, in certain circumstances and in conjunction with other factors, result in an atypical confinement. *See, e.g.*, *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004) (allegations that the plaintiff was

---

[7] Indeed, Plaintiff repeatedly alleges that his back pain continued *after* his confinement, which makes it less likely that the conditions of his confinement were the *cause* of any back pain. (*See, e.g.*, TAC ¶ 13 ("Plaintiff suffered during his confinement and after his confinement because of the severe injury that Plaintiff has . . . ."); *id.* ¶ 22 ("Plaintiff's confinement was not a normal confinement because Plaintiff suffered from an atypical and significant hardship, because Plaintiff suffered from severe pain, while confine[d] Plaintiff could not sleep or exercise during the duration of Plaintiff's confinement[] and after confinement also.").)

kept in SHU 24 hours a day, was not permitted an hour of daily exercise, and was prevented from showering for weeks at a time, could render a 90-day SHU sentence an atypical and significant hardship).  The same is true if the conditions of the confinement were such as to wholly prevent an inmate from sleeping.  *Cf. Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367 (N.D.N.Y. 2010) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights.").  However, Plaintiff does not allege *anything* about the actual *conditions* of his confinement from which the Court could infer that it was his confinement, and not the pain resulting from his injuries at the time he was confined that rendered him unable to sleep or exercise.  For example, if Plaintiff alleged that his keeplock cell was so unusually small that he could not even lay down, the Court could possibly infer that this condition prevented Plaintiff from sleeping or that the inability to lay down exacerbated his back injury and caused him great discomfort and prevented him from exercising or moving.  *Cf. Mena v. City of N.Y.*, No. 13-CV-2430, 2014 WL 4652570, at *4–5 (S.D.N.Y. Sept. 18, 2014) (holding that the plaintiff's allegations that he could not sleep for 60 hours straight because he was forced to lie on a very cold floor, in a very cold cell that was infested with cockroaches and mice, and that he shared a cell large enough for one person with three other people, were sufficient to state an Eighth Amendment claim).  The Court does not conclude one way or the other whether such an allegation would adequately state a liberty interest for purposes of Plaintiff's procedural due process claim, but rather provides the example as an illustration of the types of allegations regarding the conditions of Plaintiff's confinement that are entirely lacking from Plaintiff's Third Amended Complaint.

     Plaintiff does attach to the Third Amended Complaint the results of an MRI of his lumbar spine by Dr. Joseph L. Racanelli.  (*See* TAC Ex. B.)  Plaintiff emphasizes that the report, dated

June 8, 2012, notes that Plaintiff suffers from "a large central disc protrusion" at the L4-L5 vertebrae, which causes spinal stenosis. (*See, e.g.*, TAC ¶ 19; *id.* at Ex. B.) Plaintiff's Third Amended Complaint also points out that the pre-confinement back injury referenced in Dr. Waller's affidavit is a spinal injury at the L3-L4 vertebrae which "result[ed] in sever[e] pain call[ed] facet arthrop[a]thy." (TAC ¶ 28.)[8] Plaintiff appears to argue that because a different, presumably new injury was discovered in his June 2012 MRI, his confinement in keeplock must have exacerbated his back injury. (*See, e.g.*, Pl.'s Second Opp'n 3.) Even accepting as true that Plaintiff's MRI from June 2012 did reveal a *new* back injury that did not exist prior to his confinement, given that Plaintiff provided *no* allegations detailing the actual conditions of his confinement in keeplock, it would be utter speculation to conclude that the "central disc protrusion" was caused by his confinement as opposed to the alleged assault or some other incident during the roughly three months he would have been out of keeplock and back in general population. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Accordingly, in light of Plaintiff's relatively brief confinement to keeplock and the lack of factual allegations to support a conclusion that the conditions of his confinement "impose[d] an atypical and significant hardship in relation to the ordinary incidents of prison life," *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003), the Court grants Defendant's Motion insofar as it seeks dismissal of Plaintiff's procedural due process claim.[9] As with the Court's

---

[8] As noted above, Plaintiff attached to one of his memoranda in opposition to Defendant's Motion to Dismiss the Second Amended Complaint an affidavit from John F. Waller, M.D., which appears to have been filed in a related case, *Anthony Aikens v. Sgt. M. Jones, et al.*, No. 12-CV-1023.

[9] While Plaintiff's papers repeatedly emphasize his inability to sleep or exercise during his confinement, he does make one stray statement asserting that he "was limited to two showers

11

previous Order, "[b]ecause . . . Plaintiff has failed to allege a liberty interest, it is not necessary to reach the issue of whether he was provided sufficient process in the hearing on the allegedly fabricated charges." *Jean-Laurent v. Lane*, No. 11-CV-186, 2013 WL 600213, at *18 (N.D.N.Y. Jan. 24, 2013), *adopted by* 2013 WL 599893 (N.D.N.Y. Feb. 15, 2013).

C.  Eighth Amendment Claim

Plaintiff claims that Defendant's imposition of the keeplock penalty violated his Eighth Amendment right to be free from cruel and unusual punishment. (*See, e.g.*, TAC ¶ 23.)  The Court dismissed the earlier iteration of Plaintiff's Eighth Amendment claim in its prior Opinion because:  (1) no allegations "suggest[ed] that Defendant was directly or indirectly involved in causing any physical injury or pain to Plaintiff," (Opinion 19–20), and (2) Plaintiff "fail[ed] to set forth facts that plausibly allege that the conditions of keeplock were 'sufficiently serious' to

---

a week, and denied various privileges available to general population prisoners, such as the opportunity to obtain out of cell schooling [and] religious services." (Pl.'s Second Opp'n 7.)  To the extent Plaintiff asserts that denial of such privileges amounts to an atypical and severe hardship, his claim would still fail because denial of such privileges is part and parcel of "normal" SHU or keeplock conditions. *See, e.g.*, *Ortiz*, 380 F.3d at 654 (noting that the Second Circuit has held that a 101-day confinement under normal SHU conditions is not an atypical hardship); *Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000) (noting that "normal conditions of SHU confinement in New York" include a limit of "two showers a week, and deni[al] [of] various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling"); *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (holding that the plaintiff's inability to attend church services and communal meals over 18-day segregation period did not rise to an atypical and significant hardship); *Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (finding no atypical and significant hardship where the plaintiff was unable to go to religious services or classes during 77-day keeplock confinement).

The Court also notes that Plaintiff's opposition memo briefly states that Plaintiff was "kept in his cell for 24 hours a day." (*See* Pl.'s Second Opp'n 7.)  Although, given Plaintiff's pro se status, the Court "may consider materials outside the complaint," including statements made in opposition pleadings, the Court may only do so to the extent they are "consistent with the allegations alleged in the [c]omplaint." *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks omitted).  Plaintiff's Third Amended Complaint, however, alleges that he was "unlawfully place[d] in segregated confinement (keeplock) for 23-hours a day," (TAC ¶ 24).  As unpleasant as it surely is, being confined in a cell for 23 hours a day is a "normal condition[]" of SHU or keeplock confinement. *See Colon*, 215 F.3d at 230.

12

meet the objective prong of an Eighth Amendment claim," (*id.* at 21). The Court must dismiss the instant Eighth Amendment claim for the same reasons.[10]

First, as discussed above, there are no allegations that render it plausible that any of Plaintiff's back pain occurred as a result of his time in keeplock as opposed to either the alleged assault that occurred on January 13 or Plaintiff's pre-existing back condition, meaning the injury complained of existed before the Hearing and before Defendant was in any way involved. This lack of personal involvement "alone is reason enough to dismiss this claim." (*Id.* at 20.) Additionally, once more, Plaintiff has not alleged that he was deprived of his basic human needs *as a result of his confinement*. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that . . . the deprivation the inmate suffered was sufficiently serious that he was denied the

---

[10] As the Court explained in the prior Opinion, "[t]he conditions of a prisoner's confinement can give rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). "In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Id.* (italics omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Under the "objective" requirement, a plaintiff must show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [an inmate's] health," which can be satisfied if an inmate is deprived of "basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted). "[T]o establish the objective element of an Eight[h] Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps*, 308 F.3d at 185. Under the "subjective" requirement, a defendant "'cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 185–86 (quoting *Farmer*, 511 U.S. at 837). "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).

13

minimal civilized measure of life[']s] necessities." (internal quotation marks omitted)). Although Plaintiff alleges that he was "deprived of the minimal civilized measure of life's necessities, [specifically] sleep and or exercise," (*see, e.g.*, TAC ¶ 23), the Third Amended Complaint suggests that it was either his pre-existing back injury or a re-aggravation of that injury resulting from the January 13 assault that prevented him from sleeping or exercising, not the conditions of his confinement in keeplock. (*See, e.g.*, *id.* at ¶ 39 (alleging that the assault left Plaintiff "in severe pain during his confinement and made his confinement [result in] deprivation of at least two . . . of life[']s] necessities—namely sleep [and] exercise").)[11] Accordingly, Plaintiff's Eighth Amendment claim is dismissed.

D.  Equal Protection Claim

As explained in the Court's prior Opinion, for Plaintiff to state a viable equal protection claim under a selective enforcement or class of one theory, he "is required to allege differential treatment from similarly situated individuals." (*See* Opinion 23 (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433–34 (S.D.N.Y. 2013)).)[12] Plaintiff alleges only that he

---

[11] Indeed, although some allegations may hint otherwise, Plaintiff's submissions generally allege that his inability to sleep or exercise only existed from January 12 to January 17, at which point he received pain medication. (*See, e.g.*, TAC ¶ 12 ("[B]ecause of the severe pain he was in[,] Plaintiff could not sleep from the evening of [January 13] [u]ntil he saw his medical provider . . . on [January 17]."); Pl.'s Second Opp'n 7 ("Plaintiff[']s] sleep deprivation lasted . . . four and [a] half days [u]ntil[] he receive[d] medication for severe pain on [January 17].").) Accordingly, if true, Defendant could not have been personally involved in any deprivation of Plaintiff's constitutional rights given that he did not become involved in the matter until Plaintiff's Hearing, which began January 20.

[12] Plaintiff does not claim to be a member of a protected class in his Third Amended Complaint. "Where . . . a plaintiff does not claim to be a member of a constitutionally protected class, he may bring an Equal Protection claim pursuant to one of two theories: (1) selective enforcement, or (2) class of one." *Vaher*, 916 F. Supp. 2d at 433 (internal quotation marks omitted); *see also Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 544 (S.D.N.Y. 2014) (same).
 To state an equal protection claim "on a theory of selective enforcement or selective treatment, a plaintiff must show that (1) 'he, compared with others similarly situated, was

"has . . . stated an equal protection claim, because after Plaintiff inform[ed] Defendant that his pre-[e]xisting injury was reinjured because of the force use[d] on Plaintiff and retaliated against by . . . Lt. Tokarz and [placed in] keeplock on a false report[,] Defendant only saw fit to conspire with these officers personally on record of the . . . Hearing tape." (TAC ¶ 38.) Once again, Plaintiff "does not allege that [he] was treated differently from *any* identified individuals, let alone individuals who he claims were similarly situated to him in any respect" and the Third Amended Complaint "is completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals." (Order 23 (quoting *Vaher*, 916 F. Supp. 2d at 434–35).) Accordingly, Plaintiff's equal protection claim is dismissed.

E.  Conspiracy Claim

As with his Second Amended Complaint, the Court construes Plaintiff's Third Amended Complaint to allege a conspiracy claim against Defendant under 42 U.S.C. § 1985. (*See, e.g.*, TAC ¶ 7; *see also* Opinion 24–28.) And as with the previous claim, the instant conspiracy claim

---

selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff.'" *Vaher*, 916 F. Supp. 2d at 433 (alterations omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). To allege an Equal Protection Clause violation under a class-of-one theory, "the plaintiff must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (internal quotation marks omitted). In other words, "a plaintiff asserting a 'class of one' equal protection claim must allege that the intentional disparate treatment alleged to state the first element of the claim was wholly arbitrary or irrational." *Vaher*, 916 F. Supp. 2d at 433 (some internal quotation marks omitted). Under either theory, a "[p]laintiff is required to allege differential treatment from similarly situated individuals in order to state a viable equal protection claim." *Id.* at 433–34 (internal quotation marks omitted).

must be dismissed.[13]

Plaintiff alleges only that Defendant "conspired with [Hearing witnesses] after two different descriptions of the use of force [were] given on [the] record," (TAC ¶ 7; *see also id.* ¶ 38), and that "superior officers conspired and retaliated against Plaintiff by writing a false[] misbehavior report," (*id.* ¶ 20). As with his original conspiracy claim, Plaintiff fails to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind Defendant's actions." (Opinion at 27 (alterations omitted) (quoting *Turkmen v. Hasty*, 789 F.3d 218, 262 (2d Cir. 2015)).) Moreover, Plaintiff did "not provide any specific facts to plausibly

---

[13] As detailed in the prior Opinion, claims for conspiracy to violate civil rights, even if brought under 42 U.S.C. § 1983, "should actually be stated as a claim under [§] 1985, which applies to conspiracies." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). Section 1985(2) "renders actionable (1) a conspiracy[,] (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner, (3) the due course of justice in any State or Territory, (4) with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." *Rodriguez v. City of N.Y.*, No. 05-CV-10682, 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008). "Title 42 U.S.C. § 1985(3) prohibits, in pertinent part, conspiracies undertaken 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws.'" *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 290 (2d Cir. 1992) (quoting 42 U.S.C. § 1985(3)). "The elements of a claim under § 1985(3) are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of laws, . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 1999) (alterations in original) (internal quotation marks omitted); *see also Turkmen v. Hasty*, 789 F.3d 218, 262 (2d Cir. 2015) (same).
   Both claims "require a showing of class-based invidiously discriminatory animus" on the part of the conspiring parties, *Hickey v. City of N.Y.*, No. 01-CV-6506, 2004 WL 2724079, at *22 (S.D.N.Y. Nov. 29, 2004), *aff'd*, 173 F. App'x 893 (2d Cir. 2006), as well as "some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb*, 340 F.3d at 110 (internal quotation marks omitted). "[C]laims of conspiracy that are vague and provide no basis in fact must be dismissed." *Van Dunk v. St. Lawrence*, 604 F. Supp. 2d 654, 663 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Lastra v. Barnes and Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *6–7 (S.D.N.Y. Jan. 3, 2012) (dismissing §§ 1985(2) and (3) claims because "[c]onclusory allegations of the defendants' alleged participation in a conspiracy [we]re inadequate to make out a claim under § 1985"), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

16

suggest that Defendant 'entered into an agreement, express or tacit, to achieve an unlawful end.'"

(Order 27–28 (alteration omitted) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)).)

Accordingly, Plaintiff's conspiracy claim is dismissed.[14]

---

[14] While it is clear that Plaintiff alleges that Lt. Tokarz and/or Jones—non-parties to this suit—"retaliated" against Plaintiff in response to Plaintiff's reporting of his injury to the Nurse Administrator, Plaintiff does not appear to assert a retaliation claim against Defendant. To the extent he has put forward such a claim, it must fail. To state such a claim against Defendant, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . [D]efendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action," *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (alteration and internal quotation marks omitted), and that Defendant was personally involved in the constitutional violation, *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

First, it is not clear whether Plaintiff engaged in constitutionally protected speech or conduct. Plaintiff alleges that he was "threaten[ed] . . . and lock[ed] up for reporting being injured" and that a misbehavior report was "written in retaliation for reporting an injury (assault) on Plaintiff by . . . Jones to the Nurse Administrator." (TAC ¶¶ 4, 6.) While the filing of prisoner grievances clearly constitutes conduct protected by the First Amendment, *see, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), and "case law in this Circuit indicates that a prisoner's oral complaints to a correction officer may serve as the basis for a First Amendment retaliation claim," *Tirado v. Shutt*, No. 13-CV-2848, 2015 WL 774982, at *9 (S.D.N.Y. Feb. 23, 2015), *adopted in part by* 2015 WL 4476027 (S.D.N.Y. July 22, 2015), Plaintiff's conduct does not neatly fit within either category. Plaintiff had not yet filed a formal grievance and it appears Plaintiff's disclosure of his injury and its source was made with the purpose of obtaining medical care, not "to petition . . . for redress of grievances." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

In any event, assuming, arguendo, that Plaintiff's reporting of his injury to the Nurse Administrator was protected conduct, Plaintiff does not sufficiently allege the personal involvement of Defendant in the ultimate constitutional violation. This is so because the alleged adverse action—the filing of the misbehavior report (*see, e.g.*, TAC ¶ 4 ("[T]he misbehavior report was written in retaliation for reporting a[n] injury. . . ."); *id.* ¶ 20 ("[S]uperior officers . . . retaliated against Plaintiff by writing a false[] misbehavior report . . . because Plaintiff reported to the Nurse Administrator . . . that he was assaulted by . . . Jones."))—occurred before Defendant was involved with Plaintiff's case in any way. And although finding Plaintiff guilty and sentencing him to 30 days keeplock could possibly qualify as an adverse action, Plaintiff does not allege that Defendant, as opposed to Tokarz or Jones, was motivated by a retaliatory animus.

17

### III. Conclusion

In light of the foregoing analysis, the Court grants Defendant's Motion.[15] Because Plaintiff has already amended his complaint twice—including once in response to this Court's decision on the merits of his claims—but has still failed to state a claim, the Third Amended Complaint is dismissed with prejudice. *See Denny v. Barber,* 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. Cty. of Westchester,* No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and internal quotation marks omitted)). The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 54), and close this case.

SO ORDERED.

DATED:  September 30, 2016
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[15] Unlike his Second Amended Complaint, Plaintiff's Third Amended Complaint does not expressly refer to a substantive due process claim. Regardless, to the extent he seeks to bring such a claim, it is dismissed for the same reasons that his substantive due process claim was dismissed in the prior Opinion. (*See* Opinion 29–30.)